IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> -v- <br><br> DENNIS OWEN COLLINS, *et al.*, <br><br> Defendants. | Case No. 1:13-CR-00383 |

### ORDER

Before the Court is Defendant Thomas Bell's Motion to Suppress Statements (Dkt. No. 194, amended motion at Dkt. No. 247). The Government has opposed the motion (Dkt. No. 215). The Court has reviewed the pleadings and heard testimony and oral argument on June 13, 2014, and now issues this Order denying Mr. Bell's Motion.

On January 27, 2011 at approximately 2:00pm, law enforcement officers arrived at the residence of Defendant Thomas Bell to execute a search warrant. At the time, Mr. Bell, his girlfriend, and the homeowner were present. The officers knocked and were let in by the homeowner. No guns were drawn, and Mr. Bell was not handcuffed or touched by the officers. Defendant does not dispute that he was told that the agents were on the premises to execute a search warrant, and that he was not under arrest. After completing a protective sweep of the residence, the agents began interviewing Mr. Bell in the kitchen, within earshot of the other two occupants of the house. By all accounts, the tone of the interview was cordial and calm. At some point early in the interview, Mr. Bell testified that he asked the agents if he ought to have a lawyer. The lead agent testified that he did not recall Mr. Bell making reference to a lawyer, and in any case never told Mr. Bell that he could *not* have a lawyer present.

Mr. Bell was cooperative throughout the interview and appeared willing to answer the agents' questions. In response to one particular question about his use of the Low Orbit Ion Cannon ("LOIC") program, Mr. Bell responded that he would "plead the Fifth on that one." Agent McGaunn asked him why he responded that way and Mr. Bell confirmed that he did not want to answer that question. The interview continued on to other topics, which Mr. Bell answered without objection.[1] The following day, Mr. Bell reached out to Agent McGaunn to request a meeting at a local donut shop to make a statement and discuss the possibility of expediting the return of one of the seized computers. At that meeting, Mr. Bell admitted to his participation in DDoS attacks attributed to Anonymous.

On October 4, 2013, an arrest warrant was issued and Mr. Bell was taken into custody. He was taken to the Rockland Police Department for booking, where he was uncuffed and escorted to a conference room. At this point, the agents were not armed and Mr. Bell was presented with an advice of rights form. Special Agent Scott Durivage read the form aloud to the Defendant, informing him of his right to remain silent and his right to counsel. Defendant signed the form to indicate that he understood his rights, and proceeded to answer the agents' questions. He admitted to using the LOIC tool against various targets.

On these facts, there is no basis for the suppression of Mr. Bell's statements. Mr. Bell was not in custody when he was interviewed at his home in January 2011 upon the execution of the search warrant. He was not physically restrained at any time during the interview, no guns were drawn or pointed at the Defendant, and he was told that he was not under arrest. The cordial

---

[1] Mr. Bell alleges that the agents told him that failure to answer their questions could lead to charges related to obstructing an investigation. Specifically, he stated that the agents referred to a statute and to the well-known Martha Stewart case as a way of implying that he would face criminal charges if he did not answer their questions. However, the lead agent testified that no such threats were made and the Court credits the agent's testimony. In any event, even if Mr. Bell's account were truthful, any taint caused by the agents' conduct at the execution of the search warrant had fully dissipated and had no effect on the validity of his later confession (given after he was arrested and Mirandized).

tone of the interview (and the subsequent meeting at the donut shop) is revealed by Defendant's own email correspondence to the interviewing agent, in which he stated that he and the agent "got along well" and that the agent "never once abused [his] power, and . . . spoke to me as an equal, which is always appreciated." Dkt. No. 215, Ex. B. These circumstances are a far cry from the threatening and intimidating atmosphere the Fourth Circuit deemed custodial in *United States v. Hashime*, 734 F.3d 274 (4th Cir. 2013), and thus the agents were not required to give Mr. Bell *Miranda* warnings before speaking with him.

Although Mr. Bell states that he made reference to an attorney at some point during the questioning, merely mentioning an attorney is insufficient to invoke the Defendant's right to counsel under these circumstances for two reasons. First, the Supreme Court has ruled that the invocation of the right to counsel is not accomplished by an ambiguous or equivocal statement. *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010). Therefore, without a firm statement that the Defendant would not answer questions without an attorney present, it cannot be said that he invoked his right to counsel. Given Defendant's willingness to immediately proceed with the interview without a lawyer present, there is no indication that he effectively demanded the assistance of counsel. Second, and more importantly, even if Defendant had unequivocally asked for an attorney, he had no constitutional right to counsel in a non-custodial interview setting. The Fifth and Sixth Amendments guarantee a right to counsel during custodial interrogation and at the initiation of *formal* criminal proceedings against an individual. *See Michigan v. Jackson*, 475 U.S. 625, 629 (1986); *Rothgery v. Gillespie County*, 554 U.S. 191 (2008). Because neither of these triggers had occurred, Mr. Bell had no right to the assistance of an attorney during the interview. However, because he was not in custody, he was under no obligation to continue the interview and could have terminated the conversation at any time.

Mr. Bell's decision to "plead the Fifth" and not answer a particular question during the interview is also not a basis for suppression of his statements. As the government correctly argues, the Fifth Amendment privilege against self-incrimination is question-specific. *See, e.g., North River Ins. Co., Inc. v. Stefanou*, 831 F.2d 484, 486-87 (4th Cir. 1987); *United States v. Smith*, 623 F. Supp. 2d 693, 709 (W.D. Va. 2009) (clarifying that while a clear, blanket invocation of the Fifth Amendment is possible in a *custodial* interrogation, witnesses and those in a non-custodial setting "must make specific objections in response to specific questions"). Because Mr. Bell stated clearly that he wished to plead the Fifth "on that one," and then proceeded to voluntarily answer questions on other topics, it is evident that he was not attempting a blanket invocation of the Fifth Amendment.[2] His decision not to answer one potentially incriminating question does not necessitate the suppression of the remainder of the interview.

Finally, suppression is also not appropriate for Mr. Bell's post-arrest statements. It is clear from the testimony given in court and from the FBI Form 302 that Mr. Bell was fully Mirandized before he was interviewed at the Rockland Police Department after his October 4, 2013 arrest. He was provided with an Advice of Rights form, which he reviewed with an agent and signed before giving any statements. There is no evidence that Mr. Bell was denied counsel after requesting it, and there is therefore no basis for suppression of his post-arrest statements. Furthermore, even if some or all of Mr. Bell's statements at the time of the execution of the search warrant were deemed constitutionally defective, the Court finds that Mr. Bell's post-arrest statements, made more than two years later, are not "fruit of the poisonous tree" under *Wong Sun v. United States*, 371 U.S. 472 (1963) because any taint resulting from his earlier interview had dissipated by the time of Mr. Bell's arrest in 2013.

---

[2] Nor could he have, because he was not in custody.

Under these circumstances, there is no basis for the suppression of any of Mr. Bell's statements to law enforcement. The evidence clearly indicates that Mr. Bell was not in custody when agents executed the search warrant at his home in 2011; Mr. Bell was not restrained or touched when they entered the residence, he was told that he was not under arrest, and the tone of the in-home interview (and the subsequent interview at the donut shop, which was initiated by Mr. Bell) was calm and cordial. Moreover, as explained above, Mr. Bell's mid-interview references to an attorney and to his Fifth Amendment privilege against self-incrimination do not necessitate the suppression of his voluntary statements under these facts. Therefore, for the reasons above and those stated in open court:

1. Defendant's Motions (Dkt. No. 194, 247) are **DENIED**.

/s/
Liam O'Grady
United States District Judge

June 24, 2014
Alexandria, Virginia